Plaintiff has filed this suit under the Workmen's Compensation Act against the insurer of his employer, W. Horace Williams Company, and has alleged that on or about November 25, 1945, while working for the Willaims Company "while assisting other employees in loading logs with which to make willow mats for the levee a log fell on his left foot, straining the arch thereof and causing a contusion of the dorsum of the said foot causing a post-traumatic atrophic arthritis in said foot, and a post-traumatic bone atrophy called a Sudeck's Atrophy, which causes him great pain and suffering and has totally and permanently disabled him from doing work of any reasonable character."
Defendant filed an exception and plea of prescription or peremption and of no cause and no right of action. The plea of prescription or peremption was overruled and the exceptions of no cause and no right of action were referred to the merits. After this ruling, the defendant filed an exception and plea of res adjudicata as to all claims in excess of the sum of $3,000.00, which was also referred to the merits, and with full reservation of all rights under said pleadings, filed answer in which it admitted that on or about November 29, 1945 the accident happened as alleged by plaintiff, but denied the effects of said accident and, on the contrary, claims that only very slight minor injury was caused to the plaintiff.
On July 11, 1949 there was judgment in the District Court awarding plaintiff compensation in the maximum amount from November 29, 1945 until May 30, 1947 with interest on each weekly payment at *Page 63 
the rate of 5% per annum from the due date of each until paid, and further ordered that all of said compensation be paid in a lump sum, and further judgment for the additional sum of $195.00 for medical expenses plus interest thereon at the rate of 5% per annum from date of judicial demand until paid, the defendant to pay all costs.
The formal judgment was signed on July 13, 1949 and plaintiff immediately appealed to this Court, and on August 9, 1949 plaintiff caused execution to issue on the judgment and the full amount of the judgment of the Lower Court has been paid by the defendant under the writ. As stated by the defendant in its brief, it did not acquiesce in the judgment as it was paid only under execution and "thus reserved its right to answer the appeal in the event plaintiff took an appeal, and since the plaintiff appealed, defendant has answered the appeal "and asks, first, that the judgment be reversed and plaintiff's demands be rejected entirely; in the alternative, second, that the judgment be amended so as to deny compensation to plaintiff for the period between February 6, 1947 and June 16, 1947, and that as so amended the judgment be affirmed; in the further alternative, third, that the judgment be affirmed as it is, and, in the further alternative, fourth, that the judgment be amended so as to sustain the special plea and exception of res adjudicata filed by the defendant.
The record in this case reveals that on February 12th, 1946 the plaintiff filed suit in the United States District Court in and for the Eastern District of Louisiana against the same defendant as in the present case and made practically the same allegations as were made in the petition to the District Court of East Baton Rouge Parish. This complaint was answered by the defendant on February 27, 1946 in which it denied that the Federal Court had jurisdiction as the amount in controversy did not exceed $3,000.00, exclusive of interest and costs. The remainder of defendant's answer was a general denial.
On March 26, 1946 the defendant filed a motion in the Federal Court in which it stated that plaintiff's counsel had refused a request to have plaintiff examined by Dr. James R. Godfrey and asked the Court for an order to require plaintiff to submit to such a physical examination. Honorable Wayne G. Borah on April 8, 1946, after hearing on the motion, ordered plaintiff to present himself for examination at the office of Dr. James R. Godfrey on the 16th day of April and there submit to a physical examination and also ordered the plaintiff to present himself at the office of Dr. Dorothy R. Mattingly on the 17th day of April and submit to X-ray examination, and further gave plaintiff the right to be accompanied by his attorney and any licensed physician of his selection. The examination and X-rays were made and the testimony of the plaintiff was taken on September 10th, 1946, and on October 23, 1946 the testimony of Dr. James R. Godfrey was taken and on October 22, 1946 the testimony of Dr. Charles McVea was taken, and on October 28, 1946 the defendant filed a motion in which it requested the Court to dismiss the action on the ground of lack of jurisdiction which it stated was based on the ground that the depositions of Dr. Godfrey and Dr. McVea and their reports attached thereto showed that plaintiff could not sustain an award for compensation and medical expenses in an amount as great as $3,000.00. On November 29th, the testimony of Dr. J. A. Thom on behalf of plaintiff was taken and filed on November 6th, 1946, and on November 12th the motion to dismiss was taken up and sustained.
On January 17, 1947 plaintiff filed the present suit, however, he made no mention of the previous suit having been filed in the Federal Court, hence the plea of prescription or peremption. The plaintiff then by supplemental petition amended the original petition by declaring upon the suit which had been filed in the United States District Court and that entire record has been introduced herein. The District Court in its judgment held that the plea of prescription was not well-founded for the reason that the institution of the suit in the Federal Court had the effect of interrupting *Page 64 
the prescription of one year. This ruling is not at issue on this appeal.
The exception of no cause and no right of action which was referred to the merits has not been re-urged on appeal, however, the plea of res adjudicata is being urged on the proposition that this Court could not award more than $3,000.00 as the Federal Court had held under no circumstances could an amount greater than that be awarded. The conclusion we have reached renders this plea inapplicable to our decision of the case on the merits.
The record reveals that on February 3, 1947 the defendant by letter requested the plaintiff through his counsel to submit to examination by Dr. James R. Godfrey, Dr. Charles McVea, Dr. G. R. Kuehnle and Dr. W. Shewen Slaughter, and also that X-ray examinations be made by an X-ray specialist or specialists suggested by any of the above-named examining physicians, the costs of the examinations to be paid by the defendant.
There was no response to this letter, and on the 7th day of February the defendant secured an order for the plaintiff to show cause why he should not submit to such physical examinations as were requested in the letter, and on February 19th, 1947, the rule was made absolute and "the right of the plaintiff Aucoin to compensation and to take or prosecute any further proceedings herein is hereby suspended until plaintiff Leon Aucoin submits himself to the physical examinations requested by mover, Employers' Liability Assurance Corporation, Ltd." This order was not rescinded until the 17th day of June, 1947, hence the second alternative request of the defendant in its answer to the appeal herein asks that the judgment be amended so as to deny compensation to the plaintiff for the period between February 6, 1947 and June 16, 1947.
The testimony reveals that the day following plaintiff's accident, plaintiff was sent by his employer to Dr. James R. Godfrey of Baton Rouge who described his injury as a severe bruise of the dorsum of the left foot, and stated in his report that he prescribed "hot soaks" and massage at home and elastic support and relief from weight bearing, and, further, that X-rays had been taken by Dr. Williams which were negative for bone or joint injury and that plaintiff would need further treatment for a period of about two or three weeks and after that time he would be able to resume regular work. This report was dated December 4, 1945. The plaintiff voluntarily stopped going to Dr. Godfrey for treatment and the last date he was seen by his doctor was the 13th day of December, 1945 at approximately two weeks after his injury. He was next seen by Dr. Godfrey on April 16, 1946 in response to the order of April 8, 1946 signed by His Honor Wayne G. Borah, Judge of the Federal District Court, heretofore referred to. In the report of Dr. Godfrey dated April 30, 1946 as well as in his testimony in the Federal Court and in the District Court, he stated that on this date the plaintiff came into his office on crutches, holding his left foot off the floor so that it never touched and at that time his foot was wrapped tightly in an old filthy bandage held tightly with adhesive tape. The doctor stated that the plaintiff refused to tell him how long the foot had been wrapped but in his opinion it must have been a long time as the dressing was extremely filthy and had an odor so bad "that it stunk up my entire office when I removed it and the skin beneath it was cracked and pealing in large flakes as one finds in think (thick) skin that has been wrapped for a long time," and that plaintiff told him he had been treating his foot right along by the "hot soaks" which he had previously told him to use but "this obviously was a lie as this man's foot, to get as filthy as it was, certainly had not seen water or any other moisture in God only knows how long." He further stated that there was a slight amount of swelling present and that the flexion and extension of the ankle joint were both slightly limited, in his opinion, due to the bandage. Dr. Godfrey had plaintiff's left foot re-examined by Dr. Dorothy Mattingly, who was dead at the time of the trial but whose findings are in evidence, and she stated that the injured foot showed no evidence of fracture but that there was a marked decalcification of *Page 65 
all of the bones of the left foot and ankle, probably due to disuse. Dr. Godfrey's conclusion as a result of this examination on April 16th, 1946 was to the effect that this plaintiff had originally received a comparatively minor injury and could have returned to work a few weeks after the injury if he had been willing to do so, but that due to his refusal to use the foot and because of wrapping it tightly over a long period of time, and because of his discontinuing any beneficial treatment such as the "hot soaks" he had done himself definite harm which had resulted in the marked decalcification described by Dr. Dorothy Mattingly in her report. He did not think that the harm was permanent unless the plaintiff persisted in his misguided treatment. The doctor felt that the plaintiff's foot could return to normal in six to eight months then if he would resume "hot soaks" for the purpose of stimulating circulation in the foot and to resume activity or use of the foot.
On September 10th, 1946 in the Federal Court suit, the deposition of the plaintiff was taken and it revealed that he had been examined at his own request or that of his counsel by Dr. G. R. Kuehnle, Dr. Charles McVea and Dr. Thom. The deposition of Dr. Charles McVea was accordingly taken at the instance of the defendant in the Federal Court suit and he testified in effect that he had seen the plaintiff three or four times during the latter part of December '45 and first part of January '46 at the request of his counsel. He testified that some of the dates that he saw him were December 17, 1945, again on December 24th and on January 4, 1946, which was the last time that he had seen him professionally, and that he had rendered a report to his counsel on January 7, 1946 and to no one else. On December 17, 1945 he found the foot to be slightly swollen with good movement of all joints but a bit of complaint of pain when the foot was touched. He advised plaintiff to soak his foot and to walk as much as possible. On January 4th there was no further change except there was no more swelling present but at that time he felt that the foot was about well and that he believed that the plaintiff was exaggerating his symptoms and that he should have been able to return to his work by January 15, 1946.
The testimony of Dr. J. A. Thom was taken at the instance of the plaintiff in the Federal Court proceeding on October 29, 1946. This doctor testified that the plaintiff had come to him first on December 17, 1945 and at that time his foot was swollen and discolored; that he had an X-ray taken which was reported negative for fracture or dislocation but that he made a tentative diagnosis of arthritis even though the X-ray showed none, as there are low grades of arthritis which an X-ray will not reveal. The doctor put a sticking plaster on his foot which plaintiff wore from the 18th of December up until early February but that it was changed several times or reinforced. His last treatment was a light plaster of Paris boot which remained on plaintiff's foot until some time in March or a period of six or seven weeks, and after this cast was taken off, the doctor placed another application of adhesive plaster on the foot. This doctor agreed with the other doctors that the main cause of osteo-porosis, which the plaintiff had on April 17, 1946 as shown by the X-rays, is chiefly a condition brought about by disuse. Dr. Thom was of the opinion that the plaintiff still had some degree of arthritis which could have been caused by the injury, however, he thought that the foot would improve to the point where it would be a serviceable foot which would enable the plaintiff to use the foot as a common laborer.
It was on these depositions and reports above set forth that His Honor of the Federal District Court dismissed this suit.
Under the suspension order of February 17, 1947 the plaintiff was again examined by Dr. Godfrey on May 30, 1947 as shown by his report of June 13, 1947; by Dr. W. Shewen Slaughter on June 4, 1947 as shown by his report of August 1, 1947; by Dr. Charles McVea on May 29, 1947 as shown by his report of June 4, 1947; by Dr. G. R. Kuehnle on May 28th, 1947 as shown by copy of his report dated June 18, 1947. Drs. Godfrey and McVea testified as well as stated in their reports that *Page 66 
the plaintiff had recovered from his injury and had no further disability as of the dates of their examinations as above given. The report of Dr. Slaughter, admitted in lieu of his testimony, was to the same effect. Dr. Kuehnle was of the opinion that the plaintiff still suffered pain as a result of the injury which caused a collapse of the anterior arch of the left foot. Dr. Dorothy R. Mattingly in a letter dated May 30, 1947 to Dr. McVea in regard to an X-ray made of the plaintiff stated that the view of the left foot showed no evidence of fracture, dislocation or bone pathology; that a view of the left ankle showed no evidence of bone pathology. It would appear that this X-ray would dispute the findings of Dr. Kuehnle as set forth in his report of June 18, 1947. The preponderance of the testimony clearly establishes the fact that the plaintiff had recovered on May 30, 1947.
In addition to the above medical testimony, the Judge of the District Court, in the abundance of precaution on November 9th, 1948, after plaintiff had completed his case and at the time that Dr. McVea was testifying, asked Dr. McVea the following question and received the following answer: "Q. You feel with the benefit of such X-ray examination and the test that I suggested of him walking all day that you would be able to give this boy your opinion as to whether or not he is presently disabled? A. I believe I could, yes, Sir."
Counsel for the plaintiff objected to the test being made and the case was continued until writs could be taken to the Supreme Court which was done, and after the writs had been denied the test was made by Dr. McVea and X-rays taken by Dr. Arthur Alexander and the case was again taken up over the objection of counsel for the plaintiff and Dr. McVea testified that it was his conclusion from the test and X-rays that plaintiff could perform arduous work. Although we have not been favored with a brief on behalf of the plaintiff, we feel it necessary to review his objection and the ruling of the trial Court.
The objection which counsel for plaintiff made to the order of the Court is based upon the case of Nash v. Solvay Process Company, La. App., 189 So. 493. This case is not applicable as the Judge, after the case had been tried and submitted, took X-rays that had been introduced in evidence to an expert and based his decision upon the opinion of the X-ray expert given privately to the judge. In the present case, the Judge gave this order during the trial of the case, and when the trial was resumed, counsel for defendant was given every opportunity to examine the doctor as to the result of the test. The objection was properly overruled.
On the date that the trial of the case was discontinued in the Lower Court, the plaintiff had completed his case and Dr. McVea was being examined on behalf of the defendant when the Judge of the District Court ordered certain tests to be made by Dr. McVea and X-rays to be taken, and counsel for plaintiff objected and the trial was discontinued until after the Supreme Court had passed upon the writs. When the trial of the case was resumed on February 4, 1949, the plaintiff called as his witness Dr. Joseph A. Sabatier to which counsel for defendant objected on the ground that such testimony was not rebuttal and not admissable. While we believe the objection should have been sustained, this testimony is of little value due to the brevity of the examination made by this doctor and the fact that he had not discussed the case with any of the other doctors who had treated or examined the plaintiff, nor had he seen any of the doctors' reports. He only called Dr. Alexander on the telephone with regard to his X-ray findings. He was of the opinion, however, that the normal foot function had not been restored.
As opposed to the overwhelming preponderance of the medical testimony against him, the plaintiff contended and so testified that his foot still pained him. While we are of the opinion that this plaintiff has been most liberally treated by the trial court and that there is a possibility or a probability that this plaintiff would have only been disabled for three or four weeks had he followed the original treatment prescribed by him and that *Page 67 
his disability was due to the dis-use of the foot, we believe, as the Trial Judge, that the testimony is conclusive that on May 30, 1947 the plaintiff was no longer disabled.
The defendant's contention that the judgment of the District Court should be amended by refusing the plaintiff compensation from February 6, 1947 to June 16, 1947, the former being the date upon which the District Judge suspended the right of the plaintiff to compensation until he submitted himself to the physical examination which had been requested by the defendants, and June 16th being the date upon which the plaintiff complied with the order of the Court, is founded upon the Compensation Act No. 20 of 1914, § 10, as amended by Act No. 38 of 1918, § 1, Dart's § 4400, which reads as follows: "If the employee refuses to submit himself to a medical examination as provided in Section 9 (Section 4399), or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this act shall be suspended until such examination takes place. And, when a right to compensation is suspended no compensation shall be payable in respect of the period of suspension."
It does not appear that the plaintiff made a serious attempt to show any valid reasons for his refusal to submit to examinations as requested by the rule obtained on February 7, 1947 and tried on February 17, 1947. By minute entry of February 17, 1947, it appears that the rule was submitted on argument of the attorneys. On February 19, 1947, judgment was rendered and signed. The minute entry and judgment signed states, "The Court having considered the record, the pleadings, the statements of counsel and having heard argument of counsel, etc." Thus, it is apparent that the action of plaintiff, through his counsel, was arbitrary in his refusal to permit the examinations. It appears to us that under the plain provisions of Section 10 "when a right to compensation is suspended nocompensation shall be payable in respect of the period ofsuspension," the payment of compensation for that period is forfeited and cannot be allowed. (Emphasis ours).
The judgment of the District Court in the sum of $195.00 for medical expenses is correct.
It is, therefore, ordered that there be judgment in favor of the plaintiff awarding him compensation in the maximum amount beginning November 29, 1945 to February 17, 1947 with interest on each weekly payment at the rate of 5% per annum from the due date of each until paid, and it is further ordered that all said compensation be paid in a lump sum and that there be further judgment for the additional sum of $195.00 medical expenses plus interest thereon at the rate of 5% per annum from the date of judicial demand until paid. It is further ordered that the plaintiff pay the costs of this appeal, all other costs to be borne by the defendant.
As thus amended, the judgment of the District Court is hereby affirmed.